UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CAROLYN J. WRIGHT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | No. 1:07-CV-226<br><br>Collier / Lee |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff Carolyn J. Wright ("Plaintiff") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying the Plaintiff a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act"). Pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure, this matter was referred for a report and recommendation regarding the disposition of Plaintiff's motion for judgment on the pleadings [Doc. 9] and Defendant's motion for summary judgment [Doc. 13].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for judgment on the pleadings [Doc. 9] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc. 13] be **DENIED**; (3) the decision of Commissioner be **REVERSED**; and (4) this action be **REMANDED** to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## Administrative Proceedings

Plaintiff filed an application for DIB benefits on March 26, 2004, alleging disability beginning on December 23, 2002 (Tr. 58). After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ (Tr. 29-37). Following a hearing on May 15, 2007 (Tr. 235-62), the ALJ issued a decision on May 24, 2007, denying Plaintiff's claim for benefits finding she was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work (Tr. 12-18). The ALJ's decision became the final decision of the Commissioner on July 27, 2007, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-6).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence

standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months

3

proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.*; § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

### **ALJ's Findings**

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

4

2. The claimant has not engaged in substantial gainful activity since December 23, 2002, the alleged onset date . . . .

3. The claimant has the following severe combination of impairments: degenerative disc disease in the lumbar spine, and the residuals from ductal breast carcinoma and mastectomy . . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . .

5. . . . the claimant has the residual functional capacity to perform at least sedentary work activity.

6. The claimant is capable of performing past relevant work as a customer service representative and a secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity . . . .

7. The claimant has not been under a disability, a defined in the Social Security Act, from December 23, 2002 through the date of this decision . . . .

(Tr. 14, 16, 18).

## Issues

The issues, as presented by Plaintiff, follow:

**I.** Whether the ALJ erred at step two of the sequential evaluation in not finding that severe edema of Plaintiff's right leg, stenosis, multiple hemangiomata and anteriolisthesis with spondylosis, osteopenia, erythem of Plaintiff's right dominant arm requiring compression stockings, lymphedema, and diverticulosis were additional severe impairments.

**II.** Whether the ALJ erred by not adopting or even discussing the RFC assessment of the consultative examiner Dr. Thomas Mullady.

**III.** Whether the ALJ played doctor by substituting his own opinion for the Plaintiff's RFC in lieu of the RFC assessment of Dr. Mullady.

5

[Doc. 10 at 3-4].

## Review of Evidence

**A.     Plaintiff's Age, Education, and Past Work Experience**

Plaintiff was 64 years old at the time of the ALJ's decision (Tr. 239). She has a high school education with past relevant work experience as a customer service representative and office secretary (Tr. 52-53, 61, 239).

**B.     Medical Evidence**

Russell A. Jones M.D. saw Plaintiff on August 3, 2004, for a follow up examination due to lesions suggesting erythema nodosum involving her lower extremities (Tr. 148-49). Dr. Jones described the lesions as painful and subcutaneous urticarial-like changes which were present about the lateral aspects of the legs around the knee (Tr. 148). Dr. Jones noted that Plaintiff had been taking Aromasin since April of 2004, but had stopped it about a week earlier at his suggestion (Tr. 148). Dr. Jones' impression was: (1) right breast cancer with two positive lymph nodes and (2) painful urticaria, possibly due to Aromasin (Tr. 149).

Andrew E. Kreek, Jr. M.D. interpreted an MRI of Plaintiff's lumbar spine taken on September 3, 2004 as showing: (1) multiple hemangiomata within the L1 through L3 vertebral bodies, but no evidence of metastatic disease; (2) grade I anterolisthesis at L4 and L5 without associated spondylolysis identified, suggesting degenerative etiology; moderate canal stenosis at that level; and (3) diffuse lumbar spondylosis without additional significant spinal or neural foraminal stenosis identified (Tr. 165-66).

Plaintiff saw Dr. Jones on September 9, 2004 and he noted Plaintiff had tried to switch from tamoxifen to Aromasin, but had experienced erythma nordosum (Tr. 146). Plaintiff had no skin rash

6

at that time (Tr. 146). Dr. Jones' diagnosis was breast cancer with two positive lymph nodes (Tr. 147).

Plaintiff also saw Dr. Jones on October 18, 2004 (Tr. 144-45). Her extremities had no edema and no rash was noted on skin (Tr. 145). At a follow-up visit on December 15, 2004, Dr. Jones noted Plaintiff took Aromasin for four months, but had to stop it because of erythema nodosum (Tr. 142). Plaintiff's extremities again showed no edema and no rash on skin (Tr. 143). Dr. Jones saw Plaintiff on January 4, 2005 (Tr. 139-40), and again on January 20, 2005 (Tr. 132-33). His impression was: (1) breast carcinoma with two positive lymph nodes; (2) osteopenia; and (3) spondylolisthesis (Tr. 133, 140).

A letter dated July 13, 2005, from Marilyn Becker, a physical therapist at Avalon Therapy Services, which specializes in the treatment of lymphedema, states Plaintiff was treated at Avalon Therapy beginning on February 24, 2004, for lymphedema of the right upper extremity due to breast cancer and that within nine treatments she was reduced to normal and was independent with self-care techniques (Tr. 98). Ms. Becker stated Plaintiff returned on February 17, 2005, for a refresher to reduce edema that had returned and that in one day she was reduced by 138 ml, was fitted with a new sleeve, and was discharged (*id.*). Ms. Becker stated Plaintiff's arm was normal at discharge and her only limitations, which were the standard limitations for lymphedema, were her lifting was limited to 15 pounds and she was to avoid long periods of repetitive motion with her right upper extremity (*id.*).

Dr. Jones also saw Plaintiff on June 27, 2005 (Tr. 130-31) and again on December 13, 2005 (Tr. 126-27). His impression was breast carcinoma with positive lymph nodes (Tr. 127, 131).

Thomas Mullady, M.D. performed a consultative examination of Plaintiff on November 28, 2005 at the request of the state agency (Tr. 121-23). Plaintiff told Dr. Mullady she had a right

7

radical mastectomy for breast cancer in December 2002, and 20 regional lymph nodes were removed during the surgery, resulting in right arm pain and lymphedema in her right arm (Tr. 121). Plaintiff also told Dr. Mullady: (1) she had low back pain for the past five years due to lumbar disk disease and spondylolisthesis and (2) she could walk up to 20 minutes at a time before her back pain compelled her to stop (*id.*). Based upon a history, physical examination, and x-rays of Plaintiff's lumbosacral spine, Dr. Mullady diagnosed: (1) history of breast cancer; (2) lumbar disk disease with spondylolisthesis; (3) diverticular disease; (4) lymphedema right arm; and (5) migraine headaches (Tr. 123). Dr. Mullady stated that based upon her impairments, Plaintiff retained the capacity to occasionally lift and/or carry for up to ⅓ of an eight hour workday a maximum of ten pounds, but would not be able to frequently lift and/or carry from ⅓ to ⅔ of an eight hour workday any amount of weight; would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday; and would be able to sit, with normal breaks, for a total of about six hours in an eight-hour workday (Tr. 123).

Robert T. Doster, M.D. reviewed the records and completed an assessment of the Plaintiff's RFC for the state agency on April 7, 2006 (Tr. 192-99). Dr. Doster indicated Plaintiff could lift and/or carry up to 20 pounds occasionally, ten pounds frequently; could stand and/or walk, with normal breaks, for a total of about six hours in an eight-hour workday; and could sit, with normal breaks, for about six hours in an eight-hour workday (Tr. 193). Dr. Doster also indicated Plaintiff's postural limitations restricted her climbing, balancing, stooping, kneeling, crouching, and crawling to an occasional basis (Tr. 194). Dr. Doster further indicated the limitations set forth by Dr. Mullady – that claimant could lift and/or carry ten pounds occasionally and less than ten pounds frequently, and stand and walk two hours in an eight-hour day – were consistent with Plaintiff's self-reporting, but were not consistent with Dr. Mullady's findings on his physical examination of Plaintiff and,

8

therefore, no weight should be given to Dr. Mullady's opinion (Tr. 198).

**C.     Hearing Testimony**

As relevant, Plaintiff testified as follows: her disability began on December 23, 2002, at about the time she found out she had breast cancer (Tr. 239). Plaintiff, who lives with her husband (Tr. 241), drives but is not capable of doing so only for extended periods (Tr. 242). Plaintiff is limited in her activities due to pain and swelling in her arm (Tr. 243). She grocery shops with her husband and he lifts very heavy items, such as cases of bottled water (*id.*). Plaintiff cooks, although she and her husband eat out frequently (Tr. 244). She also loads the dishes into the dishwasher and the laundry into the washing machine (Tr. 245). She does some dusting around the house (Tr. 247). Plaintiff is missing some of the lymph nodes in her right arm, which causes her problems typing and using a computer and/or a mouse (Tr. 250). She also has problems sitting for a long period of time because of her back (Tr. 251). The medications she takes interfere with her concentration and her chronic pain interferes with her life (Tr. 251, 253). She has fatigue and often has to lie down (Tr. 260). Plaintiff is right-handed and can use her right arm to write, but she cannot use it to do repetitive things (Tr. 259). Her right arm started to swell within the first year after breast cancer surgery (*id.*).

## Analysis

**A.     Severe Impairments**

Plaintiff asserts she suffers from multiple "severe" physical impairments only a few of which were acknowledged by the ALJ [Doc. 10 at 4]. She asserts that by finding that Plaintiff suffered from severe impairments from degenerative disc disease and the residuals from ductal breast carcinoma and mastectomy, the ALJ treated her other impairments; namely, edema of the right leg, stenosis, multiple hemangiomata and anteriolistesis with spondylosis, ostepenia, erythem of

9

Plaintiff's right dominant arm, lymphedma, and diverticulosis, as only rising to the level of non-severe impairments [*id.* at 5].

With regard to Plaintiff's impairments, the ALJ specifically referenced her treatment by Drs. Greer, Jones, Klinner, and Pierce and her consultative physical examination with Dr. Mullady, and concluded she had some functional limitations secondary to degenerative changes in the lumbar spine and a limitation in lifting more than 15 pounds due to lymphedema in the right arm and found these conditions were considered severe (Tr. 13-16).

In *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006), the Plaintiff argued the ALJ erred in not finding that his multiple sclerosis was a severe impairment at step two of the sequential evaluation process. At step two, however, the ALJ found that the plaintiff did have a severe combination of impairments and continued the sequential evaluation process beyond step two. *Id.* The Sixth Circuit held that because the ALJ ruled in the plaintiff's favor at step two, it need not review the ALJ's conclusion the plaintiff's multiple sclerosis was not a severe impairment at that step. *Id.* The Sixth Circuit stated that even if the ALJ should have found plaintiff's multiple sclerosis was also a severe impairment at step two of the sequential evaluation, the failure to do so "would not be a basis for reversal or remand because the ALJ considered all of [the plaintiff's alleged limitations throughout the remaining steps of the evaluation process." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). *See also Johnson v. Astrue*, No. 3:07-CV-96, 2008 WL 746686, * 2 (E.D. Tenn. Mar. 18, 2008) (because the ALJ found that plaintiff had severe impairments and moved on to the remaining steps of the sequential analysis, determination of whether any other of the plaintiff's impairments were severe was not necessary).

In this instance, the ALJ specifically found Plaintiff did have "severe" impairments at step two of the sequential evaluation, *i.e.*, "degenerative disc disease in the lumbar spine, and the

10

residuals from ductal breast carcinoma and mastectomy." (Tr. 14). Moreover, the ALJ considered all of Plaintiff's impairments throughout the remainder of the sequential evaluation process and found all of her impairments reduced her RFC to sedentary work.[1] Thus, contrary to Plaintiff's assertions, I **FIND** the ALJ did not commit reversible error at step two of the sequential evaluation process.

**B.     Medical Source Statements**

Plaintiff asserts the ALJ erred in not adopting or even discussing, the full RFC conclusion of the consulting examiner, Dr. Mullady [Doc. 10 at 8-11]. With the regard to the medical source evidence of record, the ALJ stated:

> No treating physician has imposed any significant and permanent restrictions on the claimant's ability to perform sustained work activity.
>
> The consultative physician, Dr. Mullady, opined that the claimant was capable of occasionally lifting 10 pounds, sitting six hours and standing/walking two hours in an eight hour workday. His opinion is supported by the medical signs and clinical abnormalities, which can be expected to cause the level of symptomatology reported by the claimant. Thus, I afford this opinion great weight.
>
> Pursuant to Social Security Ruling 96-6p, I have considered the opinions of the nonexamining state agency physician who found that the claimant could perform light work activity. However, I note that this medical consultant did not provide a persuasive rationale for rejecting the opinion of the consultative physician. Thus, I afford this opinion little weight.

---

[1] Although the ALJ's finding that the "residuals from ductal breast carcinoma and mastectomy" constituted a severe impairment is somewhat cryptic because the ALJ did not explicitly identify the residuals, the ALJ specifically mentioned "degenerative changes in the lumbar spine and a limitation in lifting more than 15 pounds due to lymphedema in the right arm" as being the cause of Plaintiff's functional limitations (Tr. 15-16). Thus, despite the ALJ's failure to say so explicitly, it appears the ALJ included Plaintiff's lymphedema as a "severe" impairment within the phrase "residuals from ductal breast carcinoma and mastectomy."

11

> Accordingly, I find that the claimant retains the residual functional
> capacity to perform at least sedentary work activity.

(Tr. 17-18) (internal citations omitted). Thus, having accorded Dr. Mullady's opinion great weight, the ALJ concluded the opinion supported a finding that Plaintiff retained the RFC to perform at least sedentary work activity.

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In this case, the ALJ applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i). First, the ALJ noted that no treating physician had imposed any significant and permanent restrictions on the Plaintiff's ability to perform sustained work activity. Second, contrary to Plaintiff's argument, the ALJ explicitly discussed the consultative examination and

opinion of Dr. Mullady, concluding that Dr. Mullady's opinion was supported by his medical findings on examination of the Plaintiff and was entitled to great weight. Third, the ALJ discussed the assessment of the non-examining state agency reviewing physician, who opined that Plaintiff retained the RFC for light work, and rejected this assessment on the ground the reviewing physician failed to set forth a persuasive reason for rejecting Dr. Mullady's opinion. Fourth, the ALJ considered and credited the opinion of Ms. Beckner, who is another acceptable source concerning medical impairments under 20 C.F.R. § 1513(d)(1), that Plaintiff was subject to the standard precautions for the avoidance of lymphedema in post-mastectomy patients, namely lifting no more than 15 pounds and avoidance of long periods of repetitive motion with the affected extremity (Tr. 17). Thus, contrary to Plaintiff's assertion, I **FIND** the ALJ did not err in weighing the medical and other source evidence of record and in according great weight to Dr. Mullady's opinion.

**C.     Playing Doctor and Vocational Expert**

Plaintiff asserts the ALJ played doctor by substituting his own opinion/judgment as to the Plaintiff's RFC for that of Dr. Mullady [Doc. 10 at 101-11]. Plaintiff asserts the ALJ played doctor because he rejected the only RFC examination in the file [*id.* at 10]. Plaintiff also asserts the ALJ played vocational expert in this case [*id.* at 11]. Specifically, Plaintiff asserts the ALJ found avoidance of lymphedema required Plaintiff to avoid prolonged repetitive motion with her dominant right arm and found Plaintiff retained the RFC to work as a customer service representative and as a secretary, jobs which would involve the repetitive daily use of her hands, but did not use vocational expert testimony to determine if the limitation against repetitive use of her dominant right arm would preclude performance as a customer service representative and secretary or discuss the entries in the Dictionary of Occupational Titles ("DOT"), which he used to determine Plaintiff could perform such jobs given her RFC [*id.* at 8-10].

13

### 1. Playing Doctor

Contrary to the Plaintiff's contention, the ALJ did not play doctor by substituting his judgment/opinion as to the Plaintiff's RFC for Dr. Mullady's assessment. As noted, the ALJ found that Dr. Mullady's opinion was entitled to great weight. Plaintiff essentially argues that because Dr. Mullady opined Plaintiff could not frequently lift and/or carry any amount of weight, the ALJ should have found the Plaintiff was disabled because her RFC was less than sedentary. Also as previously noted, however, Dr. Mullady also opined Plaintiff could occasionally lift and/or carry up to ten pounds.

Although the ALJ can assess the credibility of witnesses and weigh and/or evaluate their testimony, an ALJ cannot substitute his opinion for that of an examining doctor, particularly in the absence of competing evidence. *Grecol v. Halter*, 46 F. App'x 773, 777 (6th Cir. 2002). An ALJ cannot impermissibly substitute his own views for an uncontroverted medical opinion. *Robertson v. Astrue*, No. 1:07CV64-J, 2008 WL 659458, * 6 (W.D. Ky. Mar. 7, 2008). In this case, the ALJ did not play doctor and substitute his own opinion as to the Plaintiff's RFC for that of Dr. Mullady. Rather, the ALJ found Dr. Mullady's assessment was entitled to great weight and then found Dr. Mullady's assessment was consistent with the definition of sedentary work set forth in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

As pointed out by Plaintiff, the ALJ also found Plaintiff had limitations on the use of her dominant right arm. In discussing the credibility of Plaintiff's subjective complaints, the ALJ stated:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> Marilyn Beckner, the physical therapist specializing in lymphedema, reported that the standard lymphedema precautions were lifting no more than 15 pounds and avoidance of long periods of repetitive motion with the affected extremity. I concur and find that these limitations would not preclude sedentary work activity.

(Tr. 17) (internal citations omitted).

The ALJ then concluded the Plaintiff retained the RFC to perform her past relevant work as a customer service representative and a secretary stating:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually performed. The Dictionary of Occupational Titles classifies the claimant's past relevant work as a customer service representative and as a secretary as sedentary exertion and skilled tasks.

(Tr. 18).

Social Security Ruling ("SSR") 96-9p, which addresses the implications of an RFC for less than a full range of sedentary work states in pertinent part:

> The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers and small tools . . . . "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, 1996 WL 374185 at * 3.

Dr. Mullady's assessment that Plaintiff retained the capacity to occasionally lift and/or carry

15

for up to one-third of an eight-hour workday a maximum of ten pounds, would be able to stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, and would be able to sit with normal breaks, for a total of about six hours in an eight hour workday (Tr. 123), is consistent with an RFC for sedentary work. Thus, contrary to Plaintiff's assertions, I **FIND** the ALJ did not "play doctor" and substitute his opinion as to Plaintiff's RFC for that of Dr. Mullady.

### 2.    **Playing Vocational Expert**

As noted, Plaintiff asserts the ALJ also played vocational expert in that he: (1) erred in not using vocational expert testimony to determine if the limitation that she needed to avoid the repetitive use of her dominant right arm precluded the performance of her past relevant work as a customer service representative and a secretary and (2) failed to discuss the entries in the DOT which he used to determine Plaintiff could perform the jobs as a customer service representative and secretary given her RFC [Doc. 10 at 9-10]. Plaintiff cites the DOT listing for customer service representative (financial), entry 205.362-026, which describes the customer service position as involving light work, not sedentary work [*id.* at 13].

The Commissioner responded that a description of the Plaintiff's customer service representative job as she actually performed it appears in the record (Tr. 53). The Commissioner also stated that, based upon the Plaintiff's description of her job as a customer service representative, "[s]he lifted less than ten pounds frequently and occasionally." [Doc. 14 at 8]. However, Dr. Mullady's assessment, which the ALJ found was entitled to great weight, was that Plaintiff could not lift and/or carry any amount of weight frequently.

Despite the presence of a vocational expert at the May 15, 2007 hearing (Tr. 235), the ALJ did not elicit any expert testimony as to whether Plaintiff could perform her past jobs as a secretary

16

and customer service representative given the limitations to her RFC and the ALJ's finding that she needed to avoid repetitive use of her dominant right arm in order to preclude a recurrence of her lymphedema. Although the ALJ found that Plaintiff retained the RFC to perform sedentary work, he also found Plaintiff had a non-exertional impairment, namely the need to avoid repetitive use of her dominant right arm as a precaution against lymphedema. Loss of manipulative ability or capacity is a non-exertional limitation. *Hurt v. Sec'y of Health and Human Servs.*, 816 F.2d 1141, 1143 (6th Cir. 1987) (per curiam). "A vocational expert is generally consulted where a claimant has significant non-exertional limitations." *Marchlewicz-Debats v. Shalala*, No. 93-1124, 1994 WL 109002, * 6 (6th Cir. Mar. 29, 1994). A non-exertional limitation is significant if it "restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level . . ." *Atterberry v. Secretary of Heath & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989) (quoting *Kirk v. Sec'y of Heath & Human Servs.*, 667 F.2d 524, 528-29 (6th Cir. 1981)).

The ALJ found that the avoidance of long periods of repetitive motion with Plaintiff's right arm would not preclude her from engaging in sedentary work (Tr. 17). This is not a finding that Plaintiff's non-exertional impairment would not preclude her from engaging in the full-range of sedentary work, however. Further, the ALJ also found that the "residuals from ductal breast carcinoma and mastectomy," which arguably includes lymphedema and the resulting need to avoid repetitive use of Plaintiff's right arm, constituted a "severe" impairment (Tr. 14). Accordingly, I **FIND** the ALJ's conclusion at step four of the sequential evaluation that Plaintiff retained the RFC to perform her past relevant work as a customer service representative and a secretary is not supported by substantial evidence in the record.

A district court may reverse an ALJ's decision and immediately award benefits only if "all

17

Case 1:07-cv-00226    Document 15    Filed 10/06/08    Page 17 of 19    PageID #: 70

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994) (quoting *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. This standard is not satisfied here.

Having reviewed the record in light of the Plaintiff's assertions of error, the decision of the Commissioner denying DIB benefits to Plaintiff is not supported by substantial evidence in the record. Accordingly, the decision of the Commissioner should be reversed and this matter should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this report and recommendation

### Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above I **RECOMMEND**[2]:

(1) Plaintiff's motion for judgment on the pleadings [Doc. 9] be **GRANTED**;

(2) Defendant's motion for summary judgment [Doc. 13] be **DENIED**;

(3) Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Procedure **REVERSING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4) This action be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE